Affirmed and Memorandum Opinion filed November 21, 2006








Affirmed and Memorandum Opinion filed November 21, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00569-CR

NO. 14-05-00570-CR

____________

 

ALDO PENA PENAFLOR, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause Nos.  987,510
& 987,507

 



 

M E M O R A N D U M  O P I N I O N

Following a jury trial, appellant, Aldo Pena Penaflor, was
convicted of aggravated kidnapping and aggravated sexual assault of a child and
sentenced to confinement for life in the Texas Department of Criminal Justice,
Institutional Division.  In a single point of error, appellant claims the trial
court erred in denying his motion to suppress his videotaped confession.  We
affirm.

 








I. Factual and Procedural Background

On the morning of October 13, 2001, nine year-old A.R. was
walking to school in the City of Houston.  Appellant and his twin brother, Hugo
Penaflor, were riding around in a stolen vehicle when they noticed A.R.  Hugo
Penaflor was driving.  Appellant exited the vehicle, approached A.R. from
behind,  picked her up, and forced her into the back seat of the vehicle. 
Appellant then covered A.R.=s eyes while he removed her clothes and
forcibly inserted his penis into her vagina.  Thereafter, appellant and Hugo
Penaflor drove to an industrial district and instructed A.R. to get out of the
vehicle.  

DNA samples from A.R.=s rape kit were
compared to samples from known individuals in the national Combined DNA Index
System database.  The comparison yielded a positive match for appellant and
Hugo Penaflor.[1] 
Based on the results of the DNA analysis, an arrest warrant was issued for
appellant.    

At approximately 5:00 p.m. on December 3, 2003, appellant
was arrested and transported to the Houston Police station at 8300 Mykawa
Road.  Appellant was advised of his Miranda[2]
rights and agreed to answer questions pertaining to the abduction and rape
of A.R.  Officer Heidi Ruiz interviewed appellant for approximately two and
one-half hours, from 6:30 to 9:00 p.m., on December 3 (hereafter referred to as
Athe first
interview@).  Officer Alfonso Yanez was also present.  The first
interview was recorded on videotape.  During the first interview, appellant did
not invoke his right to counsel or seek to terminate the interview.  Appellant
was given food and permitted to use the restroom upon request.  Appellant was
not handcuffed.








During the first interview, Ruiz told appellant that she
wanted to help him.  Ruiz confronted appellant with the DNA evidence and told
appellant that if he was truthful about what happened, she would tell the judge
that appellant had told the truth.  Ruiz also discussed the possibility of
getting psychiatric counseling for appellant and the range of punishment he
would face if convicted.  Appellant made no confession during the first
interview.  Appellant was offered the opportunity to take a polygraph test,
which he volunteered to do. 

On the morning of December 4, 2003, while still in custody,
appellant was transported to the Houston Police station at 1200 Travis Street
for a polygraph exam.  After taking the polygraph exam and being informed that
he had failed, appellant requested to speak to Officer Ruiz.  At approximately
9:00 a.m. on December 4, Ruiz interviewed appellant for a second time
(hereafter referred to as Athe second interview@).  The second
interview was also videotaped.  As soon as Ruiz entered the room, appellant
began making inculpatory statements.  Appellant was again advised of his Miranda
rights and thereafter confessed to the kidnapping and rape of A.R.   

Appellant was indicted for aggravated kidnapping and
aggravated sexual assault of a child.  The charges were enhanced with a prior
felony conviction for burglary of a habitation. Appellant moved to suppress
evidence of the second interview on the grounds that his statement was not freely
and voluntarily made.  The trial court conducted a suppression hearing, and
appellant=s motion was denied.  During the trial on the merits,
videotapes[3]
of the second interview were published to the jury.  Appellant was convicted on
all charges and sentenced to confinement for life.  This appeal followed.

II. Standard of Review








We review a trial court=s decision to
grant or deny a motion to suppress under an abuse of discretion standard.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a suppression
hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses.  Mason v. State, 116 S.W.3d 248, 256 (Tex.
App.CHouston [14th
Dist.] 2003, pet. ref=d).  An appellate court affords almost
total deference to a trial court=s determination of
historical facts supported by the record, especially when the trial court=s findings are
based on an evaluation of credibility and demeanor.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The appellate court affords the same
amount of deference to a trial court=s ruling on Aapplication of law
to fact questions,@ also known as Amixed questions of
law and fact,@ if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Id.  The court reviews de
novo those questions not turning on credibility and demeanor.  Id.  When,
as here, we have videotape of the confession and alleged inducements, we review
the trial court=s ruling on an application of law to facts
de novo.  Herrera v. State, 194 S.W.3d 656, 658 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d). 

III. Analysis

When determining whether a confession should have been
excluded as a matter of federal constitutional law, we decide whether the
confession was voluntary or coerced.  Arizona v. Fulminante, 499 U.S.
279, 285B86, 111 S.Ct.
1246, 1251B52, 113 L.Ed.2d 302 (1991); see also Colorado v.
Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986)
(coercive police activity is necessary predicate to finding that a confession
is not voluntary).  A confession is coerced if the defendant=s will was
overborne by the circumstances surrounding the confession.  Dickerson v.
United States, 530 U.S. 428, 434, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405
(2000).   To make this determination, we examine the totality of the
circumstances surrounding the interrogation, including the characteristics of
the accused and the details of the interrogation.  Id; Fulminante,
499 U.S. at 286, 111 S.Ct. at 1252.








Appellant argues the trial court erred in denying his
motion to suppress his videotaped confession because it was induced by direct
or indirect promises in violation of the Fifth Amendment to the United States
Constitution.[4] 
Appellant claims statements made by Officers Ruiz and Yanez during the first
interview caused appellant to make an involuntary confession during the second
interview.  Specifically, appellant argues that (1) Ruiz engaged in a Acampaign of
promises to help@ by telling appellant she was there to
help him, and, if appellant was willing to tell her the truth about what
happened, she would tell the judge appellant was truthful; (2) Ruiz told
appellant he needed to confess in order to protect himself; (3) Ruiz induced
appellant to confess by offering to get him psychiatric counseling; and (4)
Ruiz and Yanez told appellant he could avoid a life sentence by confessing. 

The State argues (1) Ruiz and Yanez made no direct promises
which caused appellant=s will to be overborne; (2) no causal
relationship exists  between Ruiz=s statements
during the first interview and appellant=s confession
during the second interview; and (3) under the totality of the circumstances,
appellant=s confession was given voluntarily.

We have reviewed the reporter=s record of the
suppression hearing, the trial court=s findings of fact
and conclusions of law, and videotapes of the first and second interviews. 
Examining these portions of the record, we find that appellant=s will was not
overborne, and his confession was made voluntarily.








The majority of appellant=s arguments are
based on statements made by Ruiz which do not rise to the level of a promise. 
For example, appellant argues Ruiz begins her Acampaign of
promises@ by making the
following statements: AWhat I=m here to talk to
you about is something, I=m, that I=m going to try to
help you out with.  What I=m here to tell you is I=d like to help you
out. . . . I=m here to help you out. . . . I=m going to do what
I can.@  Ruiz=s generalized
statements that  she would Alike to help,@ will Atry to help,@and is Agoing to do what
[she] can@ do not indicate the Aif-then@ relationship
required to establish a promise.  See Chambers v. State, 866 S.W.2d 9,
20 (Tex. Crim. App. 1993); see also Dykes v. State, 657 S.W.2d 796, 797
(Tex. Crim. App. 1983) (holding officer=s general, but
unspecific offers to help are not likely to induce an untruthful statement).

Similarly, appellant=s argument that
Ruiz promised appellant he would receive psychiatric counseling is unsupported
by the record.  During the first interview, Ruiz made the following statements:

The one that did it needs help. . .
.That=s another thing I=m trying to tell
you about.  That I can get help for you. . . .You should be thinking about what
I=m offering you. .
. . I know that people that do these kinds of things need help. . . . I can get
the right people to talk to you, to get it straight here. . . . I don=t understand why
you don=t talk to me about
this so that I can do something about getting you maybe a counselor to help you
out. 

The
State argues that none of Ruiz=s statements regarding counseling are positive
or coercive.  We agree with the State.  Ruiz=s statements that
she Acan get help@ and Acan do something
about maybe getting a counselor@ are not promises.   See Chambers,
866 S.W.2d at 20; see also Renfro v. State, 958 S.W.2d 880, 884
(Tex. App.CTexarkana 1997, pet. ref=d) (officer=s statement that
he would try to get defendant help for a drug problem did not establish a
promise). 








Appellant also directs us to statements made by Ruiz during
the first interview wherein Ruiz offered to tell the judge that appellant told
the truth.  Specifically, Ruiz stated: AWhat I=m here to do is
give you my word that when you tell me what happened and what you know about
what happened, I will go in front of the judge and tell him that you told me
the truth. . . . And what I=m telling you is that I=m willing to offer
my word to a judge that you came in here and told the truth about what
happened.@  In determining the voluntariness of a confession,
police falsehoods are relevant.  See Frazier v. Cupp, 394 U.S. 731, 739,
89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); Green v. State, 934 S.W.2d
92, 99 (Tex. Crim. App. 1996).  However, A[t]rickery or
deception does not make a statement involuntary unless the method [is]
calculated to produce an untruthful confession or was offensive to due process.@ Creager v.
State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  The effect of a lie
must be analyzed in the context of all the circumstances of the interrogation. 
Mason, 116 S.W.3d at 257B58.  Again, we have reviewed the
videotapes of the first and second interviews in their entirety.  Throughout
the first interview, Ruiz repeatedly urged appellant to tell the truth, and
made statements such as: AI don=t want you to
lie.  I want you to tell me what happened.@  Taken in
context, Ruiz=s statements were not calculated to lead appellant to
speak untruthfully.  See Creager, 952 S.W.2d at 856; see also
Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (holding
defendant=s custodial statement was voluntary where defendant
testified that interrogating officers promised to Atell the judge to
take it easy@ on him).  

Appellant next argues that Ruiz=s promises of
leniency caused him to confess untruthfully.  Our review of the videotapes
shows that Ruiz never promised appellant he would receive leniency in exchange
for a confession.  Ruiz told appellant that the range of punishment he could
expect to face if convicted was Afive to
ninety-nine@ years.  During a subsequent discussion, Ruiz stated, AIt=s five versus
ninety-nine,@ to which appellant immediately replied, Afive to
ninety-nine.@  At the conclusion of the discussion, Ruiz told
appellant, AI don=t have any power.  I=m asking you to
tell me the truth about what happened.@  Under the
totality of the circumstances, we find that Ruiz suggested to appellant, at
most, that he might receive a lighter sentence by being truthful.  See
Muniz, 851 S.W.2d at 254 (holding officer=s statement that
leniency was sometimes shown to a defendant who confessed was not a promise).  








Our evaluation of the totality of the circumstances is not
limited to analysis of the statements and actions of the police.  We must also
consider the characteristics of the suspect.  Mason v. State, 116 S.W.3d
248, 261 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).   A suspect=s ability to
resist pressure is very relevant to the issue of whether his confession is
voluntary. Id.  Here, appellant does not claim he was mentally unstable,
physically ill, or intoxicated at the time of his confession.  See Greenwald
v. Wisconsin, 390 U.S. 519, 520, 88 S.Ct. 1152, 1153, 20 L.Ed.2d 242 (1968)
(physical illness); Columbe v. Connecticut, 367 U.S. 568, 620B21, 81 S. Ct.
1860, 1888, 6 L.Ed.2d 1037 (1961) (mental instability); Jones v. State,
944 S.W.2d 642, 651 (Tex. Crim. App. 1996) (intoxication).  Additionally, the
record indicates appellant had considerable prior experience in dealing with
the police, having been arrested on at least four prior occasions.  See
Haynes v. Washington, 373 U.S. 503, 522, 83 S.Ct. 1336, 1347, 10 L.Ed.2d
513 (1963) (considering suspect=s experience with police).  These facts,
as well as appellant=s behavior and demeanor during the
videotaped interviews, indicate appellant=s will was not
overborne.

Finally, the State argues there is no causal relationship
between Ruiz=s statements during the first interview and appellant=s decision to
confess during the second interview.  We agree.  AAbsent police
conduct causally related to the confession, there is simply no basis for
concluding that any state actor has deprived a criminal defendant of due
process of law.@ Connelly, 479 U.S. at 164, 107
S.Ct. at 520.   Appellant
argues his will was overborne by a Acampaign of promises@ made to him during the first
interview.  However, appellant steadfastly maintained his innocence throughout
the first interview and made no confession.  It was not until the next morning,
approximately twelve hours later, that appellant confessed to his crimes.  During the
intervening period, appellant spent the night in jail.  On the morning of
December 4, appellant was transported to HPD headquarters and administered a
polygraph examination, which he volunteered to take.  After being informed that
he had failed the polygraph exam, appellant requested to speak to Ruiz.  Appellant=s request
initiated the second interview.  At approximately 9:00 a.m., Ruiz arrived to
speak with appellant, and appellant immediately began to confess.  Ruiz again
informed appellant of his Miranda rights, and appellant confessed to the
kidnapping and rape of A.R.         








In his appellate brief, appellant attempts to establish a
causal link between his confession and Ruiz=s statements
during the first interview.  In support of his argument, appellant directs us
to statements made by him during the second interview, wherein appellant tells
Ruiz that he wants to see his son, that he is willing Ato complete any
program,@ and he wants Ruiz
to Ahelp [him] out.@  Appellant=s argument is
unpersuasive.  The unedited videotape of the second interview demonstrates that
the statements quoted by appellant were made more than fifteen minutes after
the beginning of the interview, and after appellant had made several
inculpatory statements.  Additionally, the fact that appellant initiated the
second interview and does not allege that any express or implied promises were
made by Ruiz during the second interview weighs heavily against his
claim of involuntariness.  See Masterson v. State, 155 S.W.3d 167, 170B71 (Tex. Crim.
App. 2005) (holding confession was voluntarily given when defendant initiated
the interview and no positive promises were made by police); Johnson v.
State, 68 S.W.3d 644,654 (Tex. Crim. App. 2002) (finding statement was
voluntary where defendant initiated the idea of a deal and police made no
guarantees). 

Based upon our review of the totality of the circumstances
surrounding appellant=s confession, we hold that appellant=s confession was
given voluntarily. Therefore, the trial court did not err in denying appellant=s motion to
suppress.  Accordingly, we overrule appellants sole point of error and affirm
the judgment of the trial court.          

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed November 21, 2006.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant and Hugo Penaflor are identical twins. 
Therefore, they have the same DNA profile. 





[2]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.
1602, 16 L.Ed.2d 694 (1966).





[3]  State=s
Exhibit 19 (an edited videotape of the second interview) and State=s Exhibit 82 (an unedited videotape of the second
interview) were admitted into evidence during the trial on the merits and
published to the jury.   





[4]  Appellant does not assert a claim under the Texas
Constitution or Texas statutory law.  Therefore, we do not conduct the separate
analysis required to determine whether the statements of Officers Ruiz and
Yanez constitute improper inducements under state law.  See Muniz v.
State, 851 S.W.2d 238, 251B52 (Tex. Crim.
App. 1993) (requiring state and federal claims of involuntariness to be argued
on separate grounds with separate substantive analysis or argument provided for
each ground); see also Martinez v. State, 127 S.W.3d 792, 794
(Tex. Crim. App. 2004) (applying four-prong test to determine whether a promise
rendered a confession involuntary pursuant to Article 38.21 of the Texas Code
of Criminal Procedure); Herrera v. State, 194 S.W.3d 656, 659B60 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d) (applying Atotality of the circumstances@ test to claim asserted under federal constitutional
law, and four-prong test to claim asserted under state law).