Shawn Thomas MASON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–02–00455–CR, 14–02–00456–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 7, 2003.

Emily Munoz–DeToTo, Mark Russell Yanis, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Panel consists of Justices ANDERSON, SEYMORE and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

Following a jury trial, appellant Shawn Thomas Mason was convicted of two felonies: aggravated sexual assault of a child [1] and indecency with a child.[2] Asserting four points of error, appellant contends his convictions should be reversed. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Appellant, a 28–year–old male, and his wife lived together with complainant K.R., the wife's five-year-old daughter. In February, 2001, K.R. approached her mother and disclosed that appellant had made K.R. take baths with him, had touched K.R.'s "private areas," had shown K.R.

---

1. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(iii),(a)2(B) (Vernon 2003).

2. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 21.11(a), 1993 Tex. Gen. Laws 3586, 3616 (subsequently amended, current version at TEX. PEN.CODE ANN. § 21.11(a) (Vernon 2003)).

pornography on a computer, and had attempted to put his "private area" into K.R.

When appellant's wife confronted appellant, he denied everything and claimed K.R. was lying. Nevertheless, appellant's wife went to the police and reported the alleged abuse. As a result of the report, Captain Gay Dickerson of the Katy Police Department set up an interview and medical examination of K.R. Complainant's physical exam neither corroborated nor refuted K.R.'s story.

During her investigation, Dickerson took a written statement from K.R.'s mother and asked appellant to appear at the police station to give "his side of the story." Appellant agreed to do so, arriving the next morning with his father.

While appellant's father waited in a hallway, Dickerson and a fellow police officer, Detective Julius Belton, interviewed appellant in Dickerson's office. They read appellant his rights, asked appellant for a written statement, and tried to obtain a confession. Although appellant initially said K.R. was lying and denied complainant's claims, he later signed a written statement admitting he had exposed himself to K.R. and had sexual contact with her.

Appellant now denies his statement was voluntary. In his brief, he claims his confession was obtained through deception and physical force. First, appellant asserts Belton told him that he (Belton) was a pedophile and so understood how "being placed in that situation" could lead to improper sexual behavior. Next, appellant asserts Dickerson lied to him when she (1) told appellant his father could not be present during the interview, and (2) told appellant that complainant's physical examination showed "penetration" when in fact she knew this to be untrue. Finally, appellant asserts Dickerson and Belton told appellant that if he failed to cooperate with police, appellant would go to prison "for a long, long time," but if he cooperated with police, things would "go better" for him. Appellant also claims Belton pushed him against a wall.

The entire interview between police and appellant took approximately two hours and no attorney was present. Appellant's father claims that when Dickerson first approached him about interviewing his son, the father asked if appellant needed an attorney and Dickerson said "no." The father also claims that when he attempted to accompany his son into Dickerson's office for his meeting with police, Dickerson told him to wait outside because the case involved a juvenile and she could not disclose certain details in his presence.

Upon receipt of appellant's confession, the State charged appellant with two offenses: aggravated sexual assault with a child (cause number 872,251) and indecency with a child (cause number 872,252). Prior to trial, appellant filed a motion to suppress his written statement. The trial court held a suppression hearing outside the presence of the jury, at which only Dickerson and a notary public testified. The trial court denied appellant's motion to suppress.

In a consolidated trial, a jury found appellant guilty of both offenses. It assessed punishment at thirty-five years in the Texas Department of Criminal Justice Institutional Division (TDCJ–ID) in cause number 872,251, and at twenty years in the TDCJ–ID in cause number 872,252, with the sentences to run cumulatively.

This combined appeal arises from those convictions.

## ISSUES ON APPEAL

Asserting four points of error, appellant contends the trial court committed reversible error during *voir dire* by allowing the

State to commit the jury panel to (1) convict appellant in the absence of DNA or medical evidence, (2) convict appellant in the absence of testimony by the child complainant, and (3) consider probation instead of acquittal by invoking hypothetical fact patterns. Additionally, he claims the trial court committed reversible error by (4) failing to suppress appellant's written confession because the statement was involuntary and obtained through trickery.

## I. VOIR DIRE

In his first through third points of error, appellant asserts the trial court allowed the State to ask the venire three improper commitment questions. We disagree.

### A. Standard of review

■ The trial judge may impose reasonable restrictions on the exercise of *voir dire* examination. *Boyd v. State*, 811 S.W.2d 105, 115 (Tex.Crim.App.1991). Indeed, the trial court may limit *voir dire* when a question commits a venire member to a specific set of facts. *Ford v. State*, 14 S.W.3d 382, 390 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A trial judge may not, however, restrict proper questions that seek to discover a juror's views on relevant issues. *McCarter v. State*, 837 S.W.2d 117, 121–22 (Tex.Crim.App.1992).

■ Although *voir dire* examination is largely within the sound discretion of the trial court, a trial court "abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Babcock v. Northwest Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989); *see also* Tex.R. Civ. P. 228 (defining challenge for cause).

■ To obtain a reversal, the complaining party must show that the trial court abused its discretion and the error affected appellant's substantial rights. *See* Tex. R.App. P. 44.2(b). A substantial right is affected where the error causes a substantial or injurious effect on the jury's verdict. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000).

### B. Discussion

■ Appellant claims the trial court allowed the State to ask three improper commitment questions during *voir dire*. A commitment question is one that "commits a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex.Crim. App.2001). For a commitment question to be proper, one of the possible answers to the question must give rise to a valid challenge for cause. *Id.* at 182.

■ The inquiry for determining an improper commitment question, therefore, involves two steps: (1) a determination of whether the question is indeed a commitment question; and (2) a determination of whether the question includes facts—and only those facts—that lead to a valid challenge for cause. *Id.* at 182. If the answer to the first determination is "yes" and the answer to the second is "no," the proposed question is an improper commitment question and the trial court should not allow it. *Id.* at 182–183.

Here, appellant complains of three questions. First, he asserts the State improperly committed venire members to convict under facts presented by asking:

(1) "[T]he law does not require me to present DNA or medical evidence ... before you can convict ... As long as you have other evidence beyond a reasonable doubt, the law authorizes a conviction ... [W]ho

still needs [DNA or medical evidence], who cannot follow the law?"[3]

(2) "[W]hat if I'm able to prove my case to you beyond a reasonable doubt through other ... types of evidence, but the child [herself] cannot [testify or articulate the offense?] ... Is there anyone here who, even if they felt I proved my case through other means or evidence, cannot convict unless they hear it out of the mouth of the child complainant in court?"

Appellant also complains the State improperly committed venire members to facts analogous to his case by asking a question built on a "hypothetical" posed earlier by the trial court:

(3) "What if you're on a jury and, after seeing the evidence, you conclude that the 13–year–old [complainant described earlier by the trial court] was the instigator ... [t]hat they in essence took advantage of a 17–year–old ... Did everyone raise their hand earlier [who said they] can't even consider probation in the appropriate case, in a case where it makes sense?"

The State asserts the three questions were not commitment questions or, alternatively, that they were not *improper*, because they could logically lead to valid challenges for cause. We agree with the State's second argument.

**1. Were the State's questions "commitment questions"?**

A commitment question is one that commits a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *See Standefer*, 59 S.W.3d at 179, 183 (determining a question was a commitment question when defense counsel sought to ask venire members if they "[w]ould ... presume someone guilty if he or she refused a breath test on their refusal alone?").

Here, the State's questions required prospective jurors to:

(1) resolve the issue of whether they could convict appellant where there was no DNA and medical evidence presented;

(2) resolve the issue of whether they could convict appellant where the child complainant did not testify; and

(3) resolve the issue of whether they could give someone probation where the child complainant was the one who initiated the improper sexual encounter.

Because all three questions required venire members to commit to convicting or sentencing defendant under a certain set of facts, we find all three questions were "commitment questions." *See id.* at 180 (finding question that asked "[I]f the victim is a nun, could [the prospective juror] be fair and impartial?" was non-commitment question, while question that asked "Could you consider probation in a case *where the victim is a nun?* " was commitment question) (emphasis added); *see also Rivera v. State*, 82 S.W.3d 64, 66–67 (Tex.

**3.** Appellant complains of the entire colloquy pertaining to the State's questions about DNA and medical evidence. The State, however, points out that many of appellant's objections during this exchange were sustained with the trial court asking the State to "rephrase" and that, though given a "running objection," defense counsel did not in fact receive an adverse ruling. Because defense counsel did not pursue his objection to an adverse ruling, the State claims, appellant cannot now complain about them. *See Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991). We disagree. While we acknowledge the trial court sustained several of defense counsel's objections to the State's questions, we conclude the question was ultimately allowed to stand as presented here.

App.-San Antonio 2002, pet. ref'd) (holding the following to be a proper commitment question: "[W]ould you automatically disbelieve [defendant] simply because he is the defendant?").

Whether the three questions were improper, however, requires further inquiry.

**2. Did the State's questions lead to valid "challenges for cause ?"**

After a reviewing court determines that a question is a commitment question, the court's next step is to determine whether the question includes facts (and only those facts) that lead to a valid challenge for cause. *Standefer*, 59 S.W.3d at 183. Here, we conclude each of the State's three questions meets this test.

A venire member may be challenged for cause if (1) he possesses a bias or prejudice in favor of or against the defendant; (2) he possesses a bias against a phase of the law upon which the State or the defendant is entitled to rely; or (3) he has already decided the defendant's guilt or punishment. *Barajas v. State*, 93 S.W.3d 36, 39 (Tex.Crim.App.2002); *see* Tex.Code Crim. Proc. Ann. art. 35.16(a)(9), (10), (b)(3), (c)(2) (Vernon 1989 & Supp.2003).

■ Consistent with the second basis for a challenge for cause set forth above, the State may properly challenge a juror for cause when the juror would hold the State to a higher standard than "beyond a reasonable doubt." *Coleman v. State*, 881 S.W.2d 344, 360 (Tex.Crim.App.1994). Qualified prospective jurors must also be willing to consider the full range of punishment applicable to an offense submitted for their consideration. *Banda v. State*, 890 S.W.2d 42, 55 (Tex.Crim.App.1994). The inability to do so constitutes a bias or prejudice against the law and renders a prospective juror challengeable for cause. *Von Byrd v. State*, 569 S.W.2d 883, 891 (Tex.Crim.App.1978).

■ Individual veniremen are not challengeable for cause, however, merely for setting their threshold for reasonable doubt higher than the minimum required by law to sustain a jury verdict. *Garrett v. State*, 851 S.W.2d 853, 860 (Tex.Crim. App.1993) (venireman who could not be convinced beyond a reasonable doubt on the testimony of a single eyewitness was nevertheless venireman who could follow the law); *Murphy v. State*, 112 S.W.3d 592, 596–97 (Tex.Crim.App.2003) (an individual juror must determine what "proof beyond a reasonable doubt" means to him, for the law does not tell him). If the State chooses to use a peremptory challenge to remove such a person from the venire panel, it may do so. *See Garrett*, 851 S.W.2d at 861.

■ Here, the State asked three *voir dire* questions that it argues helped identify potential jurors who would not convict or sentence appellant under a certain set of circumstances. The first question identified veniremen who would not convict in the absence of DNA or medical evidence—even though Texas law does not require it and the State might otherwise prove its case beyond a reasonable doubt. The second question identified veniremen who would not convict in the absence of the victim's testimony—even though Texas law does not require it and the State might otherwise prove its case beyond a reasonable doubt. Finally, the third question identified veniremen who would not grant probation "in a case where it makes sense" (such as when a minor initiates sexual contact)—even though probation in such circumstances is allowed by law.

In response to the first question, four veniremen stepped forward as persons who would have difficulty convicting in the absence of DNA and medical evidence. All subsequently claimed they could follow

the law and were left on the panel by the trial court. One was removed by the State through a peremptory challenge; a second was removed by appellant.

The State's second question—pertaining to victim testimony—only identified one venireman. After extensive questioning by the trial court at the bench, he was removed by a State peremptory challenge.[4]

The State's third question identified two veniremen who admitted they might have a problem with probating a person's sentence even when the facts showed the victim was the initiator. Two others surfaced during *defense counsel's* questioning on the same topic. After questioning the venire members further, the trial court ultimately removed three for cause when they said they could not follow the law and probate a defendant's sentence under such facts.

Because all three of the State's *voir dire* questions could, and did, lead to identification of members of the venire who might not be able to follow the law, and thus could be validly challenged for cause, and because the State's third question in fact led to three valid challenges for cause, we conclude the trial court did not err when it permitted the State to ask these questions. Thus, we overrule appellant's first through third points of error.

## II. MOTION TO SUPPRESS

In his fourth point of error, appellant asserts the trial court committed reversible error by admitting appellant's written confession because it was "rendered involuntary by police coercion and conduct." We disagree.

## A. Standard of review

We review a trial court's decision to grant or deny a motion to suppress under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *See id.* An appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). The appellate court also affords the same amount of deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* The court reviews *de novo* those questions not turning on credibility and demeanor. *Id.* When there are no written findings in the record, an appellate court is to view the evidence in the light most favorable to the trial court's ruling and uphold the ruling on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000).

In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only the evidence adduced at the hearing on the motion unless the suppression issues have been consensually relitigated by the parties during the trial on the merits. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Dang v. State*, 99 S.W.3d 172, 179 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because the parties in this case consensually relit-

---

4. The record indicates K.R. testified; thus, the fact pattern described in question two never materialized.

igated the suppression issues at trial, we will examine the trial evidence as well as the evidence from the suppression hearing.

## B. Discussion

 Once an accused claims his confession is not voluntary, the burden shifts to the State to prove its voluntariness. *See Farr v. State*, 519 S.W.2d 876, 880 (Tex.Crim.App.1975). A statement is involuntary if the record reflects "official, coercive conduct of such a nature" that any statement obtained thereby is "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995); *see also Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) (coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of Due Process Clause of Fourteenth Amendment).

 The test is whether the defendant's will was "overborne" by police coercion. *Guardiola v. State*, 20 S.W.3d 216, 223 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *see Gomes v. State*, 9 S.W.3d 373, 377–78 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). To make this determination, a court looks at the totality of the circumstances. *Guardiola*, 20 S.W.3d at 223; *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Gallegos v. Colorado*, 370 U.S. 49, 55, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325 (1962); *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim.App.1997); *Darden v. State*, 629 S.W.2d 46, 51 (Tex. Crim.App.1982).

In the instant case, appellant claims his written statement was involuntary because (1) the police lied to him; (2) the police took advantage of the fact that he is a pedophile; (3) the police did not allow him to have an attorney or his father present at the time of questioning; (4) the police made implied promises of leniency; (5) the police used physical force; and (6) the police interviewed him—not to get at the truth—but merely to obtain a confession.

The State, on the other hand, asserts appellant's statement *was* voluntary because (1) appellant voluntarily came to the police station; (2) appellant was allowed to leave immediately after giving his statement; (3) appellant's interview—from start to finish—lasted only two hours; (4) appellant had his rights read to him, and voluntarily waived those rights prior to giving his statement; (5) appellant was given an opportunity for a break and enjoyed something to drink during his interview; (6) appellant neither requested nor insisted upon having an attorney or parent present during the interview; and (7) police never forced or coerced appellant in any way.

After careful review, we conclude the evidence supports a finding that appellant's statement was voluntary.

### 1. The evidence does not suggest appellant's will was overborne by police lies or false promises of leniency.

#### POLICE DECEPTION

 In determining the voluntariness of a defendant's written statement, police falsehoods are relevant. *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); *Green v. State*, 934 S.W.2d 92, 99 (Tex.Crim.App. 1996). However, "[t]rickery or deception does not make a statement involuntary unless the method [is] calculated to produce an untruthful confession or [is] offensive to due process." *Creager*, 952 S.W.2d at 856; *Jeffley v. State*, 38 S.W.3d 847, 860 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Indeed, the effect of a lie "must be analyzed in the context of all the circum-

stances of the interrogation." *Miller v. Fenton*, 796 F.2d 598, 607 (3rd Cir.1986); *accord Frazier*, 394 U.S. at 737–39, 89 S.Ct. at 1424–25.

In appellant's motion to suppress, filed April 8, 2002,[5] appellant asserted that his confession was the "product of an unlawful search/seizure ... [and was] involuntary"; however, he offered no details as to why he felt his confession was involuntary. In appellant's brief, however, he asserts that his confession was involuntary because (1) Dickerson allegedly lied to his father when she told him his father could not accompany appellant during his interview because it was a juvenile case and she could not talk about certain matters in the father's presence; (2) Dickerson lied to appellant when she alleged medical evidence showed complainant's vagina had been penetrated when in fact it did not; and (3) Belton lied to appellant when he told him he was a pedophile.

At appellant's suppression hearing, Dickerson and the notary public who notarized appellant's written statement testified for the State; no one testified for the defense. Dickerson testified that she and Belton were the two officers who interviewed appellant and that there was a portion of time during the interview when she stepped out to allow Belton to interview appellant privately.

Upon questioning by the State, Dickerson testified that appellant's statement "seemed like a voluntary decision on his part," that he seemed "to be in a normal coherent frame of mind," that he seemed "sober," that she gave appellant a *Miranda* card and "read it off to him and he dated it and signed it in [two] places ... of his own free will," and that appellant had an opportunity to take a break and get a drink, and that the entire interview took only two hours. Additionally she testified that appellant was allowed to leave "of his own free will," that neither she nor Belton ever made promises of leniency if appellant gave a statement, that she never heard appellant request an attorney, that she never heard Belton deny appellant an attorney, and that she never witnessed Belton making any physical threats. Appellant's signed *Miranda* card and signed written statement were admitted into evidence.

On cross-examination, Dickerson denied ever having had a discussion with appellant's father regarding appellant's need for an attorney. She admitted, however, that she told the father there were certain matters she was not at liberty to discuss with him because it was a case involving a juvenile, and that she told appellant the medical evidence showed penetration when, in fact, it did not. The issue of Belton telling appellant he (Belton) was a pedophile was not addressed at the suppression hearing.[6]

In his appellate brief, appellant contends the trial court improperly denied his mo-

**5.** The record reflects that appellant filed two motions to suppress his statement. The first, filed May 2, 2001, was submitted by the appellant *pro se* and was unsigned. The second, filed April 8, 2002, was filed by appellant's attorney and was properly signed. Because appellant's suppression hearing was held April 8, 2002, and the trial court signed its order denying appellant's motion to suppress on that date, this court will presume that it is the April 8 motion that was denied by the trial court.

**6.** At trial, both Dickerson *and* Belton testified. It was here that facts regarding Belton's alleged pedophilia deception were elicited. Indeed, Belton himself admitted he took a "friendly" approach to his questioning of appellant—and that he told appellant that he himself was a pedophile when he was not. This evidence was not before the trial court at appellant's suppression hearing, however.

tion to suppress because Dickerson lied about the reasons his father could not accompany him during his interview; Dickerson lied about the medical evidence showing penetration; and Belton lied about his being a pedophile. We are unpersuaded.

First, appellant fails to point to any place in the record where the evidence demonstrates Dickerson's statement to appellant's father regarding the confidentiality of certain information was untruthful. Indeed, under Texas law, a "report of alleged or suspected abuse" affecting the parent-child relationship *is* confidential under the Texas Family Code; additionally, all "files, reports, records, communications, audiotapes, videotapes, and working papers used or developed in an investigation" are also confidential. TEX. FAM.CODE ANN. § 261.201(a)(1)–(2) (Vernon 2002).

Next, appellant fails to demonstrate how Dickerson's exaggeration of the evidence against appellant rendered his confession involuntary. Indeed, misstating "the strength of the prosecution's case" against a defendant interferes "little, if at all," with a defendant's "free and deliberate choice" of whether to confess. *See Green*, 934 S.W.2d at 100 (police officer's statements that intentionally mislead defendant into believing there was an eyewitness, when in fact there was no witness, did not render confession involuntary).

Finally, appellant fails to show how the evidence that police made misstatements caused appellant's will to be "overborne." Indeed, he presented no evidence at his suppression hearing that Belton misled appellant about his pedophilia;[7] additionally, he presented no affidavits, depositions, or non-hearsay testimony to support a claim that police prevarication was calculated to produce an untruthful confession.

Because we conclude the facts do *not* support a finding that appellant's will was overborne by police legerdemain, we conclude appellant's statement was not involuntary on the basis that Dickerson and Belton were not completely truthful. *See, e.g., Frazier*, 394 U.S. at 739, 89 S.Ct. at 1425 (finding police misrepresentation that defendant's accomplice had confessed to be "insufficient" to make an otherwise voluntary confession inadmissible); *Gomes*, 9 S.W.3d at 378–79 (finding appellant's will was not overborne when police "convey[ed] a sense of 'inevitability' to appellant" by telling her the polygraph results showed she lied when in fact they did not).[8]

---

7. As stated earlier, in determining whether a trial court's ruling on a motion to suppress is supported by the record, an appellate court generally considers only the evidence adduced at the hearing on the motion unless the suppression issues have been consensually relitigated by the parties during the trial on the merits. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Dang*, 99 S.W.3d at 179. Here, Belton admitted at trial that he misled appellant regarding his own pedophilia; additionally, appellant's father testified that Dickerson misled appellant and his father regarding appellant's right to have an attorney present at appellant's interview. Because the State did not object to admission of any of this testimony, we will consider it "relitigated at trial." *Rachal*, 917 S.W.2d at 809; *Dang*, 99 S.W.3d at 179.

8. *See also Shedelbower v. Estelle*, 885 F.2d 570, 574 (9th Cir.1989) (holding that, despite officer's false statement that defendant had been identified by rape victim, the totality of the circumstances compelled the conclusion that defendant's confession "was not the product of that falsehood"); *Green v. Scully*, 850 F.2d 894, 903–04 (2nd Cir.1988) (holding that, under the totality of the circumstances test, defendant's statement was voluntary, despite officer's false statement that fingerprints at the scene matched defendant's); *Miller v. Fenton*, 796 F.2d 598, 607 (3rd Cir.1986) (holding officer's statements that victim was alive at *beginning* of interview and died *during* interview did not render confession involuntary, despite fact that victim had already died several hours earlier).

## FALSE PROMISES

Law enforcement personnel also may not elicit confessions by making false promises. *Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963) (holding defendant's will was overborne by police promise not to take away children if defendant confessed); *see also Gipson v. State,* 844 S.W.2d 738, 739–40 (Tex.Crim.App.1992) (affirming court of appeals' decision holding improper an officer's implied inducement to defendant that his confession might be used for him or on his behalf). Indeed, a confession must be free and voluntary and must not be obtained by any direct or implied promises, however slight. *Bram v. United States,* 168 U.S. 532, 542, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

A statement is involuntary, and thus inadmissible, if it is induced by a promise that is (1) of some benefit to the defendant; (2) positive; (3) made or sanctioned by someone in authority; and (4) of such a character as would likely influence the defendant to speak untruthfully. *Sossamon v. State,* 816 S.W.2d 340, 345 (Tex. Crim.App.1991); *Bordman v. State,* 56 S.W.3d 63, 69 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (defendant's confession was admissible despite church elder's statement during interrogation that if defendant confessed, he would "probably" just get "five years instead of fifteen").

There is no *per se* rule against the use of psychological tactics in interrogations. *Miller,* 796 F.2d at 605 n. 6. For example, an interrogator may play on a suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency. *Id.* at 605. These ploys may play a part in the suspect's decision to confess, but so long as "that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Id.*

Here, appellant claims his statement was involuntary because officers made two alleged false promises. First, he argues that Belton's comments that he, too, was a pedophile conveyed "the message that sex with a child is not seriously wrong in the eyes of the law, thus misleading [appellant] ... to reasonably believe ... little or nothing [would] come of his making a confession." Next, he argues Belton's and Dickerson's comments about how things would "go better" for appellant if he cooperated with police implied a promise of leniency. We reject these contentions.

First, it is true Belton misled appellant into believing Belton was a pedophile. Appellant proffers no evidence, however, to suggest this admission necessarily implied the State would go easier on him. Quite the contrary, evidence shows Belton informed the appellant that it would be up to a "jury or judge to decide what happens." Belton's assertion thus failed to satisfy at least two of the *Sossamon* criteria: not only was it of no personal benefit to defendant, it was not the kind of admission that would induce an innocent person to confess. *See Sossamon,* 816 S.W.2d at 345. Because appellant still had the ability to make a free and rational choice of whether to answer or remain silent, Belton's alleged pedophilia was immaterial.

Moreover, appellant offers no evidence to suggest Dickerson's or Belton's statements about what might happen if appellant cooperated or did not cooperate were anything more than mere predictions about future events. A "prediction about future events" is not the same as a "promise." *United States v. Fraction,* 795 F.2d 12, 15 (3rd Cir.1986) (reasoning that a "prediction" is an action *beyond* a party's control, while a "promise" is an offer to perform or withhold action *within* a par-

ty's control); *see also Espinosa v. State,* 899 S.W.2d 359, 362–63 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd) (finding the mere fact that the officer told the defendant, "Go ahead and tell us what happened. Everything will be better for you. You will get less time" did not render the defendant's statement involuntary). Dickerson and Belton did not imply it was in *their* control to determine what they told the district attorney about appellant's willingness to cooperate; they implied it was in *appellant's* control to determine what they told the district attorney.

Finally, appellant offers no evidence to suggest his will was overborne by the comments of the officers. A confession is involuntary if "it [is] obtained as the result of [the] promise." *Fraction,* 795 F.2d at 14. Here, no promises were made to appellant by his interrogators.

Finding no causal connection between Belton's and Dickerson's statements and appellant's decision to confess, we conclude appellant's will was not "overborne" by police coercion.

**2. The evidence does not suggest defendant's will was overborne by the police taking advantage of appellant's pedophilia.**

 In determining the voluntariness of a confession, a court also considers whether the police have knowledge of any special weakness of the suspect. *Gallegos,* 370 U.S. at 53–55, 82 S.Ct. at 1212–13; *Gomes,* 9 S.W.3d at 377. Indeed, a suspect's ability to resist pressure is very relevant to whether his or her confession is voluntary. *See Ashcraft v. Tennessee,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) (fatigue); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (lack of experience with police); *Greenwald v. Wisconsin,* 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968) (physical illness); *Blackburn v. Alabama,* 361 U.S.

199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960) (mental illness); *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (mental retardation); *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (race); *Jones v. State,* 944 S.W.2d 642, 651 (Tex.Crim. App.1996) (intoxication).

In the instant case, appellant claims his confession was involuntary because the police took advantage of the fact that appellant is a pedophile. He asserts that, by suggesting Detective Belton was *also* a pedophile, Belton tricked appellant into believing his offense was not serious and so would not be prosecuted. Appellant's argument fails for two reasons.

First, appellant points to no evidence—either at his suppression hearing or at his trial—that suggests appellant's will was "overborne" by the false information that Belton was a pedophile. Indeed, nothing in the record supports the proposition that appellant would necessarily have remained silent had Belton not suggested he, too, was attracted to children.

Next, appellant cites no authority to suggest that a police officer's "being a friend" is necessarily an improper interrogation technique. Quite the contrary, while a friendly, supportive, low key, nonconfrontational style is effective in eliciting incriminating statements, it does *not* mean that style of questioning is improper or that resulting statements are involuntary. *Gomes,* 9 S.W.3d at 378–79 (female officer did not overcome voluntariness of defendant's confession by taking advantage of defendant's perception that she was a woman and so would sympathize with defendant's situation; officer's "false friend" technique was only an "attempt to facilitate communication by being friendly and supportive"). *See also Frazier,* 394 U.S. at 737–38, 89 S.Ct. at 1424 (officer's sym-

pathetic suggestion to defendant that victim started fight by making homosexual advances did not overcome voluntariness of defendant's confession).[9]

Because we conclude the facts before the trial court do not support a finding that appellant's will was overborne by the fact that he was misled into thinking Belton was a pedophile, we conclude appellant's statement was not involuntary based on this evidence.

### 3. The evidence does not suggest police unlawfully denied appellant access to an attorney or parent.

■■■■■ Another factor influencing the voluntariness of a defendant's confession is whether police officers have denied access to an attorney. *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) (the presence or absence of counsel is a significant condition because counsel can "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process"); *see also Gomes,* 9 S.W.3d at 377. Also relevant is the denial of a defendant's access to family members. *Lane v. State,* 933 S.W.2d 504, 512 (Tex.Crim.App.1996) (in determining voluntariness of confession, court considered denial of access to family members and observed there was no evidence appellant was isolated from friends and family); *see also Turner v. Pennsylvania,* 338 U.S. 62, 64, 69 S.Ct. 1352, 1353, 93 L.Ed. 1810 (1949).

Here, appellant claims his statement was involuntary because he was denied access to both his attorney and father. Specifically, appellant asserts that (1) the day before appellant's interview, appellant's father asked Dickerson if appellant should have an attorney present at his meeting with police, and Dickerson assured him all they planned to do "was talk"; (2) appellant was interviewed without being properly admonished of his rights; and (3) Dickerson gave an untrue reason for appellant's father being denied access to appellant's interview. These contentions have no merit.

■■■■ First, while appellant's father may have inquired about whether appellant should have counsel present at his interview, there is no evidence in our record that appellant made a clear and unambiguous request for counsel. Rather, it shows appellant said "okay" when informed of his right to an attorney and right to leave at any time during his interview. In the absence of a clear and unambiguous request, appellant invoked no right to counsel. *See Davis v. United States,* 512 U.S. 452, 462, 114 S.Ct. 2350, 2357, 129 L.Ed.2d 362 (1994) (holding petitioner's remark, "Maybe I should talk to a lawyer," was *not* an invocation of right to counsel); *Robinson v. State,* 851 S.W.2d 216, 223 (Tex. Crim.App.1991) (an invocation for counsel must be clear and unambiguous; the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke right to counsel). *See also Frazier,*

---

9. One court has analyzed the application of the "false friend" technique this way: "While [being a false friend] might have made [the defendant] feel more comfortable about speaking to [the officer], it would not render his confession the product of a mistaken belief that the state would grant him leniency." *Miller,* 796 F.2d at 610 (holding statement was voluntary when detective never told defendant he had the authority to influence the charges brought against him or that society would look favorably upon him). In the instant case, evidence shows appellant was never told by Belton that he was not a criminal in the eyes of the State or that his confession would change the consequences of his offense. Rather, Belton told appellant it would be up to a "jury or judge to decide what happens."

394 U.S. at 737–39, 89 S.Ct. at 1424–25 (defendant's comment, "I think I had better get a lawyer before I talk any more," was only a "passing comment," *not* a request for counsel).

■ Next, the evidence shows appellant *was* duly informed of his right to counsel: (1) Dickerson and Belton testified they read appellant his rights prior to interviewing him; (2) Dickerson and Belton testified appellant voluntarily waived his right to counsel; (3) a signed *Miranda* card is in the record indicating appellant was informed of his rights and waived them; and (4) appellant's signed, written confession includes a warning regarding appellant's right to counsel. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(b) (Vernon 1979).[10] Thus, appellant was properly admonished of his right to counsel.

■ Finally, the evidence does not support appellant's contention he was denied access to his father. *See Cammon v. State*, 672 S.W.2d 845, 849 (Tex.App.-Corpus Christi 1984, no pet.) (noting that confession was not involuntary because a family member was not present inasmuch as defendant never requested a family member's presence). Rather, the record shows appellant's father was just a few feet away from appellant in an adjacent hallway during appellant's entire interview; appellant had an opportunity to take a break during the interview; and appellant never once asked to speak with his father. Moreover, as determined above in Part II B(1), Dickerson's comments to appellant's father regarding confidentiality were true. *See* TEX. FAM.CODE ANN. § 261.201(a)(1)–(2) (Vernon 2002).

Because the facts show appellant was a 28–year–old man with no physical or mental impairments, who came to the police station voluntarily and stayed only two hours, we conclude appellant was capable of deciding whether to confess without the assistance of counsel or his father; therefore, we find appellant's will was not "overborne" by meeting privately with officers at the time of his questioning.

**4. The evidence does not suggest appellant's will was overborne by physical force.**

■ To be admissible, a confession "must not be extracted by any sort of

---

10. In appellant's motion to suppress, he asserted his written statement was given in violation of article 38.22, of the Texas Code of Criminal Procedure. Article 38.22 section 2 provides that:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 ... or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(a)–2(b) (Vernon 1979). Here, *appellant was not* in custody at the time of his statement; however, the record shows he nevertheless was "read his rights" and signed a waiver that included the warnings in Subsection 2(a).

threats or violence." *Bram,* 168 U.S. at 542, 18 S.Ct. at 187. Indeed, physical mistreatment is very relevant in an analysis of the voluntariness of a confession. *See, e.g., Gomes,* 9 S.W.3d at 377 (physical brutality relevant to inquiry of voluntariness); *Green,* 850 F.2d at 902 (considering whether there had been beatings and citing *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)); *see also Roberts v. State,* 545 S.W.2d 157, 160–61 (Tex.Crim.App.1977) (addressing purported promise to release wife from custody).

Here, appellant asserts his confession was involuntary because Belton allegedly pushed him against a wall and told him to sign a confession or he would go to jail for a "long time." This evidence was admitted at trial through appellant's father's hearsay testimony. At appellant's suppression hearing and at trial, Dickerson and Belton both denied any allegations of force or coercion.

Because the trial court is the sole judge of the weight and credibility of the witnesses' testimony at a hearing to determine the voluntariness of a confession, and because the judge is free to believe or disbelieve all or any part of any witness's testimony, we conclude that, under the totality of the circumstances test, the evidence supports a finding that appellant's statement was freely given. *See Darden,* 629 S.W.2d at 51.

**5. The evidence does not suggest police had an improper motive.**

■ To determine the voluntariness of a confession, a court should also review the police motive. *Spano v. New York,* 360 U.S. 315, 323, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (1959) (finding appellant's will was overborne by police pressure where police were not "trying to solve a crime," but rather were concerned primarily with securing a statement).

Here, appellant asserts the police improperly "strove to obtain a confession from appellant" because (1) they employed a "procedure" that had proved effective with securing statements from other suspects; and (2) they admitted they "wanted [appellant] to give ... an incriminating statement."[11]

■ Appellant has waived his right to assert this claim, however, because he never mentioned it in his motion to suppress or at his suppression hearing. Tex.R.App. P. 33.1(a); *Etheridge v. State,* 903 S.W.2d 1, 16 (Tex.Crim.App.1994); *see also Gomes,* 9 S.W.3d at 381 (no preservation of argument for appellate review where appellant failed to raise complaint in motion to suppress or object at suppression hearing); *Jeffley,* 38 S.W.3d at 861 (appellant failed to preserve claim that police did not notify her mother when her non-custodial interrogation became custodial—thus rendering her statement involuntary—because she did not object in her motion to suppress or at her suppression hearing.).

Moreover, while Dickerson and Belton both acknowledge they were eager to obtain a statement from appellant, nothing in the record suggests the officers preferred getting a *false* statement over *no* statement. Quite the contrary, Dickerson and Belton testified at length about how they went out of their way to remove the barriers that might have inhibited appellant's truthfulness.

For example, the officers met with appellant privately, rather than in the presence of his father. They gave appellant an opportunity to take a break and enjoy a soda. They removed the only woman—

---

11. Although appellant does not say so precisely, he seems to imply that Dickerson and Belton cared more about closing their case than obtaining the truth.

Dickerson—from the room and left the two men to talk privately. They even suggested Belton, too, was attracted to children. Such evidence is not proof of an improper motive; rather, it demonstrates a desire to support appellant even when the truth may be socially unacceptable.

Because appellant never raised the issue of police motive in his motion to suppress, and because there is no evidence that appellant's will was "overborne" by Dickerson's and Belton's resolve to elicit a statement from appellant, we find that any motive police may have had to obtain a confession had no bearing on the voluntariness of appellant's confession.

 Based on the totality of the circumstances, we conclude appellant's statement was voluntary. Indeed, appellant voluntarily came to the police station, was sober and well-rested at his interview, was not in custody, was apprised of his legal rights, acquiesced to being interviewed without his father or lawyer present, never was handcuffed or restrained in any way, spent only two hours in the presence of officers, signed a *Miranda* card, signed a confession that two officers and a notary public say was voluntarily given, and left of his own free will. Aside from the hearsay testimony of one witness who was not even present during the interview, there is absolutely no evidence of physical abuse, duress, or unlawful denial of counsel.

Accordingly, we conclude the trial court did not err in denying appellant's motion to suppress his confession and overrule appellant's fourth point of error.

Having overruled all of appellant's points of error, we affirm the judgment of the trial court in cause numbers 872,251 and 872,252.