In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00143-CR
______________________________


JAIME MEDINA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Criminal District Court 4
Dallas County, Texas
Trial Court No. F-0153002-VK


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            A jury found Jaime Medina guilty of murder. Based on the jury's punishment
recommendation, the trial court sentenced Medina to thirty-five years' imprisonment. On appeal,
Medina challenges the evidence as factually insufficient to support his conviction and contends he
received ineffective assistance of counsel. We affirm.
I. Background
            Several of the witnesses at trial were related to either Medina or the victim. Javier Gonzalez
was shot and died in the living room of the home of Sebastian Pinales and Mary Lua.


 Pinales and
Lua lived in one half of a duplex located on Hudson Street in Dallas, Texas. Rosemary Coronado
and her husband, Pinales's parents, lived in the other half of the duplex. 
            Pinales was murdered before the trial of the case now on appeal. Lua, however, was at home
during Gonzalez' murder, although she was in her bedroom at the time of the shooting. Chase Tuley,
however, was in the living room with Gonzalez, Pinales, and Medina at the time Gonzalez was
murdered. As for Coronado and her husband, they were inside their half of the duplex when they
heard gunfire erupt from next door. They left their home to investigate what was happening next
door.
II. Factual Sufficiency
            In his first point of error, Medina contends the evidence is factually insufficient to support
his conviction. Medina argues that testimony of the State's witnesses contains too many internal and
external inconsistencies, and the State's decision to parade the victim's relatives in front of the jury
invoked sympathy for the victim, which prompted the jury to blame Medina for Gonzalez' death,
rather than acquit Medina for lack of inculpatory evidence. 
            A factual sufficiency review dictates that we review the evidence in a neutral light, favoring
neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); see also Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996). In determining the factual sufficiency of the evidence to
establish the elements of the offense, we may set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 7;
Clewis, 922 S.W.2d at 129. Additionally, we must be mindful of the jury's role in determining
witness credibility and what weight should be given to evidence or testimony that conflicts with
other evidence or testimony. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).
            The indictment charged Medina with intentionally and knowingly murdering Gonzalez by
shooting Gonzalez with a gun. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2004). The
indictment alternatively alleged Medina murdered Gonzalez by committing an act clearly dangerous
to human life (shooting Gonzalez with a gun), thereby causing Gonzalez' death. See Tex. Pen. Code
Ann. § 19.02(b)(2) (Vernon 2004). 
            The forensic evidence admitted at trial showed Gonzalez was shot five times, including once
to the lower back. This latter shot severed Gonzalez' aorta, resulting in his death.


 Police also
analyzed "hand wipings"


 from Pinales, who had died before trial. Laboratory tests of those samples
showed positive results for the presence of two of the three elements commonly associated with
gunpowder residue.


 These samples did not, however, register sufficient quantities of the third
element for the analyst to confirm the presence of primer gunshot residue on Pinales' hands. The
laboratory analyst opined that the hands of someone who had not fired a gun, but later handled a
weapon that had been fired, might test positive for gunpowder residue because powder that was
deposited on the gun during its firing could be transferred to the hands of anyone who later handled
that weapon. Thus, neither the absence nor presence of minor amounts of all three metals would,
by itself, be sufficient to prove that the tested individual had actually fired the weapon.


 
            When the police arrived at the scene of the shooting, several people said they did not see who
shot Gonzalez. At trial, however, those witnesses changed their stories and gave testimony that
inculpated Medina as the shooter. One such person was Lua. According to Dallas Police Officer
Chauncey McBride, Lua initially told police she did not know who had shot Gonzalez. Lua also told
police that Pinales was not near Gonzalez at the time he was murdered. But at trial, Lua admitted
to the jury she had lied to police. Pinales was in the room with Gonzalez when he was killed. After
Lua heard the gunshots, she went to the front room. She had, in fact, seen Medina, with a gun in his
hand, standing over the slain Gonzalez and digging through Gonzalez' pockets. 
            Coronado also told the police she did not know anything about the shooting. At trial,
however, she testified she heard the first few shots and ran next door because she was worried about
the occupants. Coronado then told the jury she saw Medina fire two or three more shots at Gonzalez. 
            As we stated earlier, Tuley was with Medina, Gonzalez, and Pinales at Pinales' home on the
night of the shooting. Tuley testified he saw Medina pick up a gun from a table and point it at
Gonzalez. Tuley, being frightened, then hid behind a couch and heard five shots. When Tuley came
out from his hiding place, Gonzalez was dead on the floor and Medina had fled the scene. 
            On direct examination, Tuley admitted he was currently serving a prison sentence for
aggravated assault with a deadly weapon. He also said he and Pinales had been "[d]rinking and
getting high" during much of the day before the shooting. In fact, according to Tuley's testimony,
he had drifted in and out of a drug-induced state of unconsciousness during most of the evening. 
            This case turns on whether the jury believed Lua's and Coronado's earlier statements to police
that they saw nothing, or instead chose to believe their testimony at trial, where they confessed their
earlier lies but submitted that their trial testimony was truthful. Additionally, the jury was free to
accept or reject the testimony of Tuley, a convicted felon, that he saw Medina with a gun in his hand,
standing over the slain Gonzalez. As stated earlier, it is the jury who determines whether a witness'
testimony is credible and what weight, if any, should be accorded to that testimony. Cain, 958
S.W.2d at 408–09. It is not the role of an appellate court, while reviewing a cold record without the
benefit of observing a witness' demeanor, to supplant a jury's reconciliation of conflicts within the
evidence with the court's own opinions. The evidence in this case, though conflicting, is factually
sufficient. We overrule Medina's first point of error.
III. Ineffective Assistance
            In his second point of error, Medina contends his trial counsel provided ineffective assistance
of counsel in three areas: (a) counsel permitted the State and the trial court to improperly commit
veniremembers during voir dire, (b) counsel failed to object to improper impeachment and irrelevant
victim impact evidence, and (c) counsel failed to request that all bench conferences be recorded.
            The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective assistance,
an appellant must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell
below an objective standard of reasonableness, and (2) counsel's deficient representation prejudiced
appellant's defense. Strickland, 466 U.S. at 688; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002). To meet this burden, an appellant must show that the attorney's representation fell
below the standard of prevailing professional norms and that there is a reasonable probability that,
but for the attorney's deficiency, the result of the trial would have been different. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). In other words, the appellant must prove counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result. Strickland, 466 U.S. at 686. If, however, "there is at
least the possibility that the conduct could have been legitimate trial strategy," then we must "defer
to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." Murphy
v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).
A. Commitment Questions
            Medina contends counsel provided ineffective assistance because he failed to object to certain
voir dire questions asked by the State and the trial court, which Medina now contends were
improper"commitment" questions. We will consider each allegedly improper question in the order
it was briefed by the parties.
            First, the prosecutor asked juror number forty-two:
Say that we put on all of our evidence. All of our evidence is circumstantial
evidence. 
Can you convict based on that? You believe everything beyond a reasonable
doubt. We have proved all the elements of the offense. Did we prove anything?

            The Texas Court of Criminal Appeals has previously affirmed a trial court's challenge for
cause when a veniremember said he or she could not convict a defendant of capital murder solely
based on circumstantial evidence with no eyewitnesses. Barnard v. State, 730 S.W.2d 703, 712–14
(Tex. Crim. App. 1987). 
            More recently, the Texas Court of Criminal Appeals referenced this issue in Standefer v.
State, 59 S.W.3d 177 (Tex. Crim. App. 2001). In dicta, the Standefer majority opined that the
question, "Could you find someone guilty on circumstantial evidence alone?" was an improper
commitment question.


 Id. at 183 n.28. In reaching such a conclusion, the court relied on its earlier
decisions in Garrett v. State, 851 S.W.2d 853, 859–60 (Tex. Crim. App. 1993), and Castillo v. State,
913 S.W.2d 529 (Tex. Crim. App. 1985). Standefer, 59 S.W.3d at 183 n.28. 
            In Castillo, the prospective juror told the trial court he could never find someone guilty based
merely on the testimony of a single law enforcement officer. Castillo, 913 S.W.2d at 531–32. The
trial court granted the State's challenge for cause, presumably because the trial court concluded the
juror would be unable to follow our law, which permits convictions based on circumstantial
evidence. Id. On appeal, the Texas Court of Criminal Appeals held the State had failed to show the
prospective juror's "categorical refusal" was predicated on something other than the veniremembers'
understanding of proof beyond a reasonable doubt. Id. at 534. Without such a showing, held the
court, "there is no indication the venireman cannot follow the law, . . . ." Id. Stated differently, the
court found it critical that the State had not shown that the juror could put aside a bias against the
testimony of a single officer and find the defendant guilty if that same juror nonetheless believed the
officer's testimony established the defendant's guilt beyond a reasonable doubt. Id. at 533. The court
went on to explain:
This is not to say that a venireman who maintains he would never convict on the
basis of one eyewitness is never properly the subject of a State's challenge for cause. 
It depends upon the reason he says he would never convict. A venireman who says,
for instance, that he could not convict even if he believed the State's only eyewitness,
and that testimony convinced him beyond a reasonable doubt of the defendant's guilt,
can be challenged for cause, Garrett notwithstanding. Such a venireman really does
hold the State to a higher burden of proof than the law allows. He has an agenda of
his own for conviction, but one which bears no relation to the law. If he cannot set
his personal agenda aside, he should be excused at the State's demand.
 
Id. at 533–34. 
            In Garrett, the Texas Court of Criminal Appeals reviewed a capital murder case in which the
State had secured the dismissal of a prospective juror on the belief that the veniremember would not
be able to follow law applicable to the case. Garrett, 851 S.W.2d at 859. (The veniremember said
he could never, based solely on the facts of the crime, find a defendant was a future danger to
society. Id. at 857–59.) The court held "a venireman is not subject to challenge for cause merely
because he indicates he would require more evidence than the legal minimum in order to answer
special issue two affirmatively." Id. at 860. The court went on to write that, if the State did not want
that particular veniremember to serve on the jury, it was required to exercise one of the State's
peremptory strikes, rather than rely on a challenge for cause. Id. at 861.
            In Standefer, the court reviewed a voir dire question that asked, "Would you presume
someone guilty if he or she refused a breath test on their refusal alone." Standefer, 59 S.W.3d at 183.
The court determined the question was a commitment question because it asked "whether the
prospective juror would resolve the issue of guilt against the defendant if the juror learns a particular
fact -- that the defendant has refused a breath test." Id. The court further elaborated that "[t]he facts
in this question would not lead to a valid challenge for cause because a juror may permissibly
presume guilt from such evidence [that the defendant had refused to give a breath specimen.]" Id.
            In the case now before us, the State's question sought to eliminate a potential juror who could
not render a guilty verdict based on circumstantial evidence, regardless of whether that juror
otherwise believed the defendant was guilty beyond a reasonable doubt. Such a question is not an
improper commitment question, for the specific reason that it sought to elicit a bias against rendering
a conviction based on evidence that otherwise satisfied the State's burden of proving guilt beyond
a reasonable doubt. Cf. Castillo, 913 S.W.2d at 533–34.


 Medina has therefore failed to satisfy
Strickland's first prong—that counsel erred. Moreover, even if the question had been improper, the
record before us shows juror number forty-two, the person to whom the question was directed, was
not within the range of persons from which Medina's jury was chosen. Accordingly, the record
cannot support a showing of harm under the second prong of the Strickland analysis.
            Second, the prosecutor asked, "Do you think you need to see that gun [to convict someone
of murder]?" In Barajas v. State, the Texas Court of Criminal Appeals wrote, "A [voir dire] question
is proper if it seeks to discover a juror's views on an issue applicable to the case." 93 S.W.3d 36, 38
(Tex. Crim. App. 2002). The court noted, however, that an otherwise proper question is
impermissible if the question attempts to commit the jury to a particular verdict based on particular
facts. Id.; Standefer v. State, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). In this case, asking
whether a prospective juror would require the State to produce the murder weapon might identify
a juror who would require the State to bring forth more evidence than was required by law. Stated
differently, such a juror might require the State to prove not only the statutory elements of the crime
beyond a reasonable doubt, such a juror would further add the additional, nonstatutory element of
bringing the murder weapon into the courtroom. A juror who would require the prosecution to prove
more than is required by law is rightfully challengeable for cause, and it is not improper for attorneys
to ask voir dire questions of prospective jurors that elicit such feelings. As such, the State's question
in this case was proper. Cf. Mason v. State, 116 S.W.3d 248, 255–56 (Tex. App.—Houston [14th
Dist.] 2003, pet. filed) (trial court did not err by permitting the State to ask jurors whether they would
require DNA or medical evidence to convict the defendant of aggravated sexual assault or
indecency). The performance of Medina's counsel, therefore, did not fall below an objective
standard of reasonableness: the State's voir dire question was not improper.
            Third, the State asked, "If you find beyond a reasonable doubt all the evidence in a case,
could you convict someone without knowing why the crime happened or a motive behind it?" The
State asked that question after first telling the jury that the State does not have the duty to prove
motive, a correct statement of law. See Bush v. State, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982);
Abshire v. State, 62 S.W.3d 857, 865 (Tex. App.—Texarkana 2001, pet. ref'd). Thus, the State's
question asked the prospective juror whether he or she would require the State to prove more than
what was required under the law. A juror's inability to follow the law, or a willingness to hold either
side to a higher burden of proof, is a proper ground to challenge for cause. Cf. Mason, 116 S.W.3d
at 255–56. Medina has failed to show counsel's performance fell below an objective standard of
reasonableness by not objecting to the State's voir dire question about motive.
            Fourth, the trial court asked, 
Right now is there anybody here who thinks that if they [the prosecutors] prove
beyond a reasonable doubt that a firearm caused the death but they [the prosecutors]
don't have the firearm itself, that you [a prospective juror] would not return a verdict
of guilty under those circumstances? If so, that's fine but you need to let us know.
As explained above, to require the State to put the murder weapon into evidence adds an additional
burden not otherwise required by statute. A juror who would require the State to prove more than
is required by law is challengeable for cause. Id. The trial court's question was proper. Therefore,
Medina has not satisfied the first prong of Strickland.
B. Victim Testimony
            Medina further argues his trial counsel provided ineffective assistance because he failed to
object to improper victim impact testimony during the trial on guilt/innocence. During testimony
by Armando Galindo, the victim's uncle, the State asked Galindo to identify several people sitting
in the gallery. Galindo then identified the victim's family members, giving the names of each. 
Medina contends that no jury could "put the images and names and faces of the victim's mourning
family out of their minds during the trial and objectively decide on the issue of guilt or innocence." 
            Assuming, without deciding, that counsel erred, Medina has failed to show that, "but for
counsel's alleged errors, the result of the trial would have been different," as required under the
second prong of Strickland. Further, ineffective assistance claims cannot be based on "retrospective
speculation"; they must be firmly rooted in the record. Bone, 77 S.W.3d at 835. We have reviewed
the record and found no such evidence. Accordingly, Medina has failed to establish by a
preponderance of the evidence he received ineffective assistance of counsel.
C. Bench Conferences
            Finally, Medina contends trial counsel provided ineffective assistance because he failed to
object to the court reporter's failure to record the bench conferences that occurred during the trial. 
We first note the record shows Medina's counsel successfully moved to have all bench conferences
recorded. Accordingly, as part of his trial strategy, counsel could have reasonably assumed the court
reporter would comply with the trial court's order without the necessity of counsel's supervision.



            However, even assuming, arguendo, that trial counsel erred by not supervising the court
reporter, there is no evidence in the record that, "but for counsel's error, the result would have been
different." Medina filed a motion for new trial, but the motion was overruled by operation of law
without a hearing. See Tex. R. App. P. 21.8. We, therefore, have no record of what was said during
the unrecorded bench conferences. As such, the record before us does not provide firm evidence
that, had the bench conferences been recorded, those recordings would provide evidence of a
reversible error. Instead, Medina invites this Court to speculate about the maladies that occurred. 
This we cannot do. See Bone, 77 S.W.3d at 835.
            Medina has not shown, by a preponderance of the evidence, that his trial counsel provided
ineffective assistance. The record does not support a conclusion that both prongs of Strickland's test
for ineffective assistance of counsel have been satisfied. Accordingly, we overrule Medina's second
point of error and affirm the trial court's judgment.


                                                                        Jack Carter
                                                                        Justice


Date Submitted:          March, 29, 2004
Date Decided:             April 9, 2004

Do Not Publish