# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00333-CR

**Dalawrence Jarobert Raines, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-07-202131, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Dalawrence Jarobert Raines appeals his conviction for possession with intent to deliver cocaine in a drug-free zone. Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2009). He was sentenced to fifteen years in prison. Raines contends that the trial court erred by denying his motion to suppress the cocaine. He argues that the evidence should have been suppressed because the search of his person exceeded the scope of a proper frisk incident to detention and because the State failed to provide a credible witness to show that the police had probable cause to arrest him.

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When a warrantless seizure occurs, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating

the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). "[R]easonable suspicion requires 'that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)). A reasonable suspicion means more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). Reasonable suspicion requires significantly less basis than probable cause. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

We consider experienced police officers' perceptions and review their perceptions objectively, rather than subjectively. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). We must ask whether a police officer had a "minimal level of objective justification," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Immigration & Naturalization Servs. v. Delgado*, 466 U.S. 210, 217 (1984)), bearing in mind "commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). We evaluate the totality of the circumstances at the inception of a warrantless detention and can find it justified only if the officer points to specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Ford*, 158 S.W.3d at 492-93; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

We use a bifurcated standard in reviewing a trial court's ruling on a motion to suppress evidence. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's determination of historical facts supported by the record,

2

especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Id*. At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Mason v. State*, 116 S.W.3d 248, 256 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). We review de novo those questions not turning on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. If the trial judge's decision is correct under any theory of law applicable to the case, the decision will be sustained. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

Austin Park Police Officer Shaquan Muhammed was the sole witness at the suppression hearing. Officer Muhammed testified that he was on foot patrol in downtown Austin when he received a report that a store owner complained that an individual had tried to sell him crack cocaine. Officer Muhammed testified that the store owner reported that the individual was a black male wearing a red shirt and blue jeans and that the individual was still in the same location. Officer Muhammed testified that he and other officers converged on the site where the individual was allegedly selling crack cocaine. Officer Muhammed arrived in less than three minutes and saw a person matching the description from the report, whom he identified at the hearing as Raines. Officer Muhammed testified that, upon his arrival, Raines attempted to ride away on a bicycle.

Officer Muhammed testified that, while he detained Raines, Officer Hanson went to talk with the store owner who had reported the drug sales. After Officer Hanson reported that the store owner confirmed that Officer Muhammed had detained the individual who had tried to sell the store owner crack, Officer Muhammed handcuffed Raines and frisked him for weapons. Officer Muhammed testified that he handcuffed Raines to prevent him from leaving on his bicycle.

3

Officer Muhammed testified that he found a large, compact object in the rear area of Raines's pants. Officer Muhammed could not identify the object, and asked Raines if he had "used the restroom on himself or is it a hernia, is it anything I need to be made aware of." Raines did not answer except to say that "he didn't know what it was." Raines resisted Officer Muhammed's attempts to widen his stance in order to search more thoroughly. Officer Muhammed testified that "at that particular point I didn't know if it was a box of razor blades, I didn't know if it was—what it was, and for my safety, I had to find out what it was." Officer Muhammed obtained some gloves, forced Raines's legs apart, and retrieved from Raines's pants a baggie containing rocks of crack cocaine.

The trial court concluded as follows:

> It appears to me under Penal Code Article 14.04 that the State when shown by satisfactory proof upon the representation of a credible person that a felony has been committed, that would be delivery of a controlled substance, it appears that the offender is about to depart, as the testimony indicates, the defendant was about to jump on his bike and leave, officer has the right without a warrant to arrest the accused.

> I think whether it was an investigatory detention or whether it was an out-and-out arrest, it appears it was permissible under the existing law, so the Court will at this time deny the defense motion to suppress.

The crack cocaine was offered at trial without further objection or discussion.

Raines contends that the search exceeded the scope of a frisk for weapons because Officer Muhammed continued to search him after determining that he did not have a weapon. *See Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). Although officers conducting a *Terry* frisk for weapons are permitted to seize items that a "plain feel" reveals are contraband, the *Terry* search

4

doctrine does not authorize the officer to continue to manipulate the contents of a suspect's clothing if the officer knows the clothing does not contain a weapon. *Id*. at 378.

Raines contends that Officer Muhammed's testimony that he asked Raines if the object was a hernia or feces demonstrates that Officer Muhammed knew that the object was not a weapon. Raines ignores Officer Muhammed's testimony that the object was big, hard, and round and that "I didn't know if it was a box of razor blades, I didn't know if it was—what it was, and for my safety, I had to find out what it was." Raines contends that, because he was handcuffed, he was incapable of using a weapon against the officers. There is no evidence in the record supporting the assertion that the handcuffs would have prevented Raines from using a weapon—for instance, a razor blade tucked into his pants—against the officers. Officer Muhammed testified that he approached Raines based on the description from the informant, that Raines sought to flee the scene on his bicycle, and that Officer Muhammed searched Raines for a weapon only after Officer Hanson confirmed with the informant that Raines was the alleged drug seller. We conclude that Officer Muhammed's testimony at the suppression hearing provided sufficient evidence to support the warrantless search and the trial court's denial of the motion to suppress.[1] Because we find the denial of the motion to suppress supported on the basis of the *Terry* search, we need not

---

[1] Although we can review evidence adduced at trial when the parties consensually relitigate the suppression issue during the trial on the merits, that did not occur here. Accordingly, we limit our review to the evidence adduced at the suppression hearing. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). We note, however, that the testimony about the circumstances of the search adduced at trial does not alter our view of the propriety of the trial court's denial of the motion to suppress.

consider whether the trial court also correctly found that the search was also justified as incident to a proper arrest.

The State volunteers that it elected not to proceed on an enhancement paragraph alleging a prior offense and that, therefore, "[t]he judgment erroneously reflects that appellant pleaded true to the enhancement paragraph and should be reformed by this Court to state 'N/A.'" We modify the trial court judgment by deleting the finding that appellant pleaded true to the enhancement paragraph. We affirm the judgment as modified.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Modified and, as Modified, Affirmed

Filed:   January 21, 2010

Do Not Publish

6