**Affirmed and Memorandum Opinion filed July 10, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-11-00474-CR

———————————

### JUAN JAIMES-HERNANDEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 60,686**

## MEMORANDUM OPINION

Appellant, Juan Jaimes-Hernandez, was convicted by a jury on two counts of aggravated sexual assault of a child. Tex. Penal Code Ann. § 22.021 (West 2011). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not appeal the sufficiency of the evidence supporting his convictions; therefore, we provide only those facts necessary as background to this appeal.

The complainant, M.G., was born on November 18, 1993. M.G.'s mother, E.G., lived in Freeport from 1991 until 2002. E.G. originally met appellant in Mexico when appellant was living with E.G.'s sister. Appellant moved from Mexico to Freeport in 1997 or 1998. Because he had nowhere else to stay, appellant, after arriving from Mexico, lived with E.G. and her children. Appellant lived in E.G.'s apartment for about nine months. In 1999, E.G. told appellant he needed to find a place of his own. At that point, appellant moved to an apartment near E.G.'s apartment complex.

After appellant moved, E.G. would occasionally leave M.G. and M.G.'s older brother with appellant. During appellant's trial, M.G. testified that when he was six or seven, appellant sexually abused him while M.G. was staying at appellant's apartment. According to M.G., appellant would tell him to take his clothes off and then get down on his hands and knees. Appellant would then put his penis in M.G.'s anus. According to M.G., this occurred more than ten times.

M.G. did not initially report the incidents because he did not know until he reached the fifth grade that what appellant had done was wrong. At that point, he became embarrassed by what had happened to him. In August 2009, M.G. told his mother that appellant had hurt and violated him. E.G. then reported the incidents to the Freeport Police Department.

Following a police investigation, appellant was indicted for two counts of aggravated sexual assault of a child and two counts of indecency with a child. Prior to voir dire, the State abandoned the indecency counts. At the close of the evidence, the jury found appellant guilty of both counts of aggravated sexual assault of a child. The jury assessed appellant's punishment at twelve years' confinement on each count, which the trial court ordered would be served consecutively. This appeal followed.

DISCUSSION

In a single issue on appeal, appellant contends his trial counsel was ineffective in seven different ways.   We address each contention in turn.

## I.      Standard of Review

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).   To establish ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.   *Id.*

An accused is entitled to reasonably effective assistance of counsel.   *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).   However, reasonably effective assistance of counsel does not mean error-free representation.   *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).   When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight.   *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).   There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy.   *Salinas*, 163 S.W.3d at 740; *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).   It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.   *Lopez*, 343 S.W.3d at 143. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation.   *Id.* at 142.   When such direct evidence is not

available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). However, when no reasonable trial strategy could justify trial counsel's conduct, then trial counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Put another way, when trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant can prove trial counsel's performance was deficient, he still must prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Malett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

## II. Analysis

Appellant did not file a motion for new trial and his trial counsel has not had an opportunity to explain his handling of appellant's defense. Accordingly, with one exception, the record is completely silent as to the reasons for trial counsel's conduct.

In his single issue, appellant argues that his case falls within that small group of cases where the record on direct appeal establishes ineffective assistance of counsel as a matter of law. In *Lopez*, the Court of Criminal Appeals recently addressed an ineffective

4

assistance of counsel case. *Lopez*, 343 S.W.3d at 139. In *Lopez*, the Court of Criminal Appeals stated that it is a rare case in which trial counsel's ineffectiveness is apparent from the record and an appellate court may address and dispose of the claim on direct appeal. *Id.* at 143. The court declared that it is a "difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* With that framework in place, we turn to appellant's contentions.

### A.    Prosecutor's Oath

Appellant initially contends his trial counsel was ineffective because he did not object when the prosecutor "struck at [appellant] over the shoulders of counsel" by referencing his prosecutor's oath not to suppress facts or secrete witnesses during voir dire and his duty as a prosecutor to see that justice is done during final argument. According to appellant, the combined effect of these statements was to inform the jury that only prosecutors seek to uphold truth and justice, and left potential jurors believing appellant's counsel "has no ethical duty" and "was free to do anything to save him."

Appellant's initial complaint is that his trial counsel did not object to the following section of the prosecutor's voir dire:

> Now there is an oath that you'll take as a juror. You took one this morning and when you're sworn in you'll actually take another one. And what the oath says is that when a jury has been selected the following oath shall be administered them by the Court or under its direction. And here is the oath:
>
> You and each of you do solemnly swear that in the case of the State of Texas against the Defendant you will a true verdict render, according to the law and the evidence so help you God. By taking this oath you're saying that you will follow the law. And it's very, very important to me that you be willing to follow the law.
>
> I also have an oath. I have an oath that I will not suppress facts nor secrete witnesses. And I can tell you that I believe in that oath and I'll do my duty

5

based on that oath. But if you can't follow the law or you won't follow the law, I need to know now.

The prosecutor then explained the elements of the offense and that the State was required to prove those elements beyond a reasonable doubt. The prosecutor then asked if the prospective jurors understood the elements of the offense and the law regarding the burden of proof. He then followed up by asking "[a]nd you're willing to follow the law?"

This was not an improper attempt to strike at appellant over the shoulders of defense counsel because the prosecutor did not direct his statements at defense counsel personally or explicitly impugn defense counsel's character. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (defining the concept of striking at the defendant over the shoulders of defense counsel in final argument). In addition, we conclude this was a proper question for voir dire as it sought to establish that the potential jurors could follow the law. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (stating that a voir dire question is proper if it seeks to uncover grounds for a challenge for cause based on a venire member's bias against a phase of the law either side is entitled to rely on).

Appellant also complains that his trial counsel was ineffective when he failed to object to the following part of the prosecutor's final argument during the guilt-innocence phase of the trial:

> When I get cases like this they come from the Grand Jury. And I look at the cases. I look at the facts. I read the police reports. I watch the video. I look at the statements. I make a decision either to go forward or to dismiss it. Because my job is not to convict. It's even in the book. My job is to see that justice is done.
>
> When I go from there I make a determination and I ask myself there, who will speak for the victim? I know that out in the field that Sergeant Cardoza spoke for the victim. I know that [E.G.] spoke for her son. I know that Luis and myself have spoken for the victim here today. And I hope you consider all the evidence in this case that you will speak for the victim also. As a snapshot of our society what you say here and what you do here will resonate through the walls of this courthouse into Brazoria County and I hope the message that you're ultimately going to send is that we, the people

6

here in Brazoria County, will not tolerate our children being sexually assaulted. We just don't tolerate it.

We also conclude that the challenged argument by the prosecutor was not an improper attack on defense counsel's character but instead was a permissible plea for law enforcement. *See Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997) (stating that a plea for law enforcement is a proper subject during closing argument).

Because the challenged voir dire questions and final argument were proper, the failure of appellant's trial counsel to object cannot serve as the basis for a finding that he was ineffective. *See Johnson v. State*, 233 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## B.    Reasonable Doubt

Appellant next contends his trial counsel was ineffective during voir dire when he failed to object to the prosecutor's use of allegedly improper hypothetical examples to explain reasonable doubt. Appellant argues this was an improper attempt by the State "to commit the venire to lowering its burden of proof."

Assuming arguendo trial counsel's performance was deficient as a result of his failure to object to the prosecutor's voir dire discussion of reasonable doubt, we must decide if, as a result of that deficient performance, there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Salinas*, 163 S.W.3d at 740. We conclude appellant has not met the second, prejudice prong.

Appellant has not challenged the sufficiency of the evidence supporting his convictions. In addition, the jury charge, which appellant does not challenge on appeal, instructed the jury on the beyond-a-reasonable-doubt burden of proof. Absent evidence to the contrary, a jury is presumed to follow the instructions set forth in the court's charge. *Haro v. State*, No. 01-10-00877-CR, 2011 WL 6938530, *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, pet. ref'd). We conclude appellant has not demonstrated a

reasonable probability that, but for his trial counsel's failure to object to the prosecutor's reasonable doubt discussion during voir dire, the result of the proceeding would have been different. *See Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (overruling ineffective assistance claim without addressing first *Strickland* prong because the defendant's failure to make any effort to prove prejudice from counsel's allegedly deficient performance precluded relief); *Haro*, 2011 WL 6938530, at *4.

## C.     Delayed Outcry

Appellant next contends that his trial counsel was ineffective when he failed to object to the prosecutor's voir dire discussion of "delayed outcry." According to appellant, this represented an improper attempt to commit the venire panel to the State's version of events.

The "delayed outcry" voir dire consists of the following:

[PROSECUTOR]:  Delayed outcry.   Anyone ever heard that term before? Juror 48, where have you heard that before?

JUROR 48:          I'm a counselor.   Just in our training.

…

[PROSECUTOR]:   Okay.   What kind of counseling work do you do?

JUROR 48:          I'm a school counselor.

[PROSECUTOR]:   Okay.   Can you help your peers here to understand what an outcry is?

JUROR 48:          It's just when someone waits a period of time before telling what happened to them.

[PROSECUTOR]:   And in your experience is that something that's common?

JUROR 48:          I've never experienced that with one of my own students or clients, but it is common.

8

[PROSECUTOR]: Okay. And that doesn't mean that it didn't happen, does it, simply because there is a delayed outcry?

JUROR 48: No. It doesn't mean that.

The prosecutor next asked if any member of the venire panel could think of reasons why a child might delay telling someone what happened to them. This question elicited numerous responses including "fear," "embarrassment," and the child is too young to understand what is going on. Next, the prosecutor asked the venire panel to "guess what types of feelings that children might have towards their abusers?" This question again elicited a variety of responses from the venire panel.

The prosecutor then asked:

You know, I have to worry about what you think of a sexual assault case where because of the delay in outcry there is no DNA evidence. I don't have Horatio Cane here from CSI. We don't have a little box that we wave up and down and it gives me all the DNA for the last 10 to 15 years. We don't have that. And because it's such a complicated thing that a child has been raped or sexually assaulted, and as you've heard people talk about here, there is a … delayed outcry. Unfortunately, because the outcry is delayed there is no tangible evidence. There is just not. Is there anyone here who would hold me to DNA evidence? Is there anyone here who would have to have DNA evidence to follow the law in this case?

During voir dire, a question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Barajas*, 93 S.W.3d at 38. An otherwise proper question is impermissible if it attempts to commit the juror to a particular verdict based on particular facts. *Barajas*, 93 S.W.3d at 38; *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Standefer*, 59 S.W.3d at 179.

Not all commitment questions are improper. For a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause and must contain only those facts necessary to test whether a prospective juror is

9

challengeable for cause. *Id.* at 182. An improper commitment question attempts to create a bias or prejudice in the prospective juror before he has heard the evidence, whereas a proper voir dire question attempts to discover a prospective juror's preexisting bias or prejudice. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

We conclude the prosecutor's questions regarding delayed outcry and the lack of DNA evidence were not improper commitment questions. *See Mason v. State*, 116 S.W.3d 248, 254 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (involving proper commitment question that asked venire panel whether they could convict without DNA or medical evidence). Because the prosecutor's questions were not improper, defense counsel could not be ineffective for failing to object to them. *See Johnson*, 233 S.W.3d at 116.

### D.     Inadmissible Evidence

In his fourth contention, appellant argues his trial counsel was ineffective when he failed to object to the prosecutor's voir dire discussion of "all the inadmissible evidence [the State] possessed which could not be shown to them or admitted for their consideration." The portion of the State's voir dire at issue here consists of the following:

> [PROSECUTOR]:   Now there are certain types of evidence that you may hear about. Police reports, witness statements, these can't come in. You may hear about a DVD, a recording from the Child Advocacy Center where you actually have the victim talking to a forensic investigator. None of that comes in. Does that bother anyone? Is there someone that would have to see that type of evidence? No?

> Okay. If a person testifies you don't get their statement in because obviously they are there to testify. It could be used to refresh their memory or to impeach a witness, but you can't get that in there and I just want you to keep that in mind.

Appellant contends this portion of the prosecutor's voir dire was an improper invitation to the prospective jurors to speculate on inadmissible corroborative evidence and trial counsel's performance was deficient because he did not object.

10

As discussed above, a voir dire question is proper if it seeks to discover a prospective juror's views on an issue applicable to the case.  *Barajas*, 93 S.W.3d at 38. Here, the prosecutor sought information on the prospective jurors' position on whether they would be able to convict even though items of evidence were discussed during trial testimony, but were not thereafter admitted into evidence.   We conclude this is a proper subject of inquiry.  *See Mason*, 116 S.W.3d at 256 (concluding voir dire questions were proper because they could reveal prospective jurors subject to challenges for cause). Because the prosecutor's questions were not improper, defense counsel could not be ineffective for failing to object to them.  *See Johnson*, 233 S.W.3d at 116.

### E.     N.A.M.B.L.A.

In his fifth contention, appellant asserts his trial counsel was ineffective because he failed to object to the prosecutor's voir dire discussion of the North American Man Boy Love Association ("NAMBLA").   According to appellant,

> the prosecutor's initial questions concerning NAMBLA were proper. However, the prosecutor's continued gratuitous discussion and expansion on the details and goals of this organization, which few on the venire had heard of and no one belonged to, served no purpose other than its shock value calculated to gain sympathy for [the] alleged child abuse victim….

Appellant argues this voir dire discussion was "never intended to assess the desirability of the members of the venire" and trial counsel should have objected.

The NAMBLA voir dire, in its entirety, consists of the following:

[PROSECUTOR]:   And forgive me for asking this, but I need to know.   Is there anyone here who is either a member of NAMBLA, also known as North American Man Boy Love Association, or support their cause? Anyone ever heard of NAMBLA?

You're shaking your head, Juror Number 56?

JUROR 56:          Yeah.   I've hear [sic] of it.

[PROSECUTOR]:   What have you heard about it?

11

JUROR 56:        Oh, man, you know, it was from the TV magazine, you know, 20/20, and that – that they molest children and they support the molestation of children.

[PROSECUTOR]:    There is actually a movement in the United States – Juror Number 63?

JUROR 63:        I heard about it on a talk radio how they believe that because a child might get stimulated by someone doing something that they enjoy it.   That's a belief that I heard they carry.

[PROSECUTOR]:    And what they want to do is decriminalize adults having sex with children.   Now because I've got the burden I always worry about that kind of individual getting on my jury.   Do I think that they are going to admit it?   No.   But I feel in doing my due diligence I have to ask.   Is anyone here who is a member of NAMBLA or supports their goal of decriminalizing sex with children?   No?   Okay.

Appellant was on trial for aggravated sexual assault of child.   We hold the prosecutor's questions regarding the prospective jurors' knowledge about, membership in, or sympathy for, the goals of NAMBLA were proper.   *See Barajas*, 93 S.W.3d at 38. Since the NAMBLA questions were proper inquiries directed at the prospective jurors, defense counsel could not be ineffective for failing to object to them.   *See Johnson*, 233 S.W.3d at 116.

F.      **Striking Juror 62 for Cause**

During the voir dire, Juror 62 asked to discuss an issue in private at the bench. Once she was called to the bench, Juror 62 stated that the question that had led to her request was: "have you formed an opinion one way or the other about [appellant's] guilt or innocence."   Juror 62 then informed the court:

And I do psychological evaluations for Galveston County on some of the adjudicated sex offenders and I get them after they have been through the legal process.   When I get them – when I do the evaluation they are very interested in telling me that they are really innocent they just did the plea bargain because blah, blah, blah.   And it was easier and they are really innocent.

But part of the treatment process, because my husband does these types of sex offender treatment groups, is that they have to admit their guilt. And they don't want to admit their guilt because they think – they think they made a plea and that's their cop out.

My husband and I have talked about this over the years. We've been doing this for many years, and we've said, well, if they are really innocent why don't they just go to trial? So now I'm sitting here – I'm thinking, well, this guy has pushed it to trial so he must feel strongly that he's innocent or he must have a very good case. So that's why I said yes, I'm finding myself having an opinion about his innocence.

When questioned by the judge, Juror 62 said that she could listen to the evidence and make a decision based on that evidence. The State then challenged Juror 62 for cause. The trial judge then asked appellant's trial counsel if he was challenging Juror 62 for cause. He responded: "I'm thinking yes, Judge, because I'm afraid she might taint the jury if she got on it." Because both sides had asked for Juror 62 to be removed for cause, the trial court, despite his stated belief that she was not challengeable for cause, excused Juror 62 from the venire.

In his sixth contention of ineffective assistance of counsel, appellant argues his trial counsel was ineffective when he joined the State's request to strike Juror 62 for cause. According to appellant, the potential juror was favorably disposed toward appellant and there was no possible trial strategy to support his trial counsel's request that she be struck for cause. We disagree.

Given that Juror 62 conducted psychological evaluations on adjudicated sex offenders, we conclude that appellant has not met his burden to show that his trial counsel's decision to join the State's motion to strike Juror 62 because he was concerned "she might taint the jury" was not a reasonable trial strategy and was instead conduct so outrageous that no competent attorney would have engaged in it. *See State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008) (holding that trial counsel's failure to exercise a peremptory challenge against a prospective juror in order to preserve error for an appeal based on the trial court's denial of a motion to strike that prospective juror for cause was

13

not outside the bounds of what any competent attorney would have done); *see also Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (noting that an attorney's decision to strike particular prospective jurors is "inherently strategic in nature").

### G.      Statements Outside of the Record

Finally, appellant contends his trial counsel was ineffective when he failed to object to the prosecutor (1) arguing outside the record during the guilt-innocence phase; and (2) allegedly testifying during his cross-examination of appellant during the punishment phase of appellant's trial.

Appellant contends his trial counsel should have objected to this section of the prosecutor's final argument:

> And you heard the defense counsel asked I think Sergeant Cardoza, well, in the Hispanic culture isn't it an affectionate culture?   Well, I've been married – my wife is Mexican and I've been married to her for 24 years.   It's a very affectionate culture.   We do like give each other a peck on the cheek.   We hug our kids.   But, folks, I asked [appellant] on the stand when he kissed you was it sexual in nature?   And he said yes.   So, if this is the Hispanic culture about being affectionate then that kiss on the cheek would be nothing else than just that, a kiss on the cheek.   But he said it was sexual in nature. That doesn't go against [M.G.].   That goes against his way of thinking.

Appellant goes on to argue that no conceivable trial strategy could justify trial counsel's failure to object to the prosecutor's insertion of facts outside the record during his closing argument.

The State responds that trial counsel's failure to object could have been a matter of trial strategy because making an objection would have brought additional attention to appellant's belief that a young child was making sexual advances toward him.   We agree. We conclude trial counsel's failure to object to the prosecutor's argument does not constitute conduct so outrageous that no competent attorney would have engaged in it. Therefore, since the record is silent as to why appellant's trial counsel failed to object,

appellant did not meet his burden under the first *Strickland* prong. *Lopez*, 343 S.W.3d at 143; *Goodspeed*, 187 S.W.3d at 392.

Next, appellant contends his trial counsel was ineffective when he objected to, but failed to obtain a ruling on, the following portion of the prosecutor's cross-examination of appellant during the punishment phase of appellant's trial:

> [PROSECUTOR]: And I'm confused. You know, I've listened to your statement probably about five or six times and I thought I went through it with a fine tooth comb. I mean, I looked at every line. I listened to every word you said in there. But it wasn't until the middle of trial that this question you asked to Sergeant Cardoza —
>
> [TRIAL COUNSEL]: Your Honor, I would object. Is there a question in there some place? I haven't heard one yet.
>
>  [PROSECUTOR]: Your Honor, I'm setting up the predicate for it and I was just fixing to get to it.
>
> THE COURT: All right. Ask your question.

Even assuming trial counsel's performance was deficient by not obtaining a ruling or asking for an instruction to disregard, appellant must still meet the second *Strickland* prong, which requires appellant to demonstrate a reasonable probability that the result of the proceeding would have been different if his trial counsel had acted professionally. *Thompson*, 9 S.W.3d at 812. Appellant argues that the prosecutor's statements were objectionable because they referred to matters outside the record. Appellant does not point out any objective facts or make any explanation demonstrating how he was prejudiced by the fact his trial counsel did not obtain a ruling and an instruction to disregard but instead, merely stopped the prosecutor's soliloquy in mid-stream and then obtained an instruction from the trial judge forcing the prosecutor to move on and ask his next question. We conclude appellant has not met the second *Strickland* prong. *See Ladd*, 3 S.W.3d at 570.

## CONCLUSION

Having addressed and rejected each argument contained within appellant's sole issue on appeal, we overrule that issue and affirm the trial court's judgment.


/s/      Margaret Garner Mirabal
              Senior Justice


Panel consists of Justices Seymore, Boyce, and Mirabal.[1]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[1] Senior Justice Margaret Garner Mirabal sitting by assignment.

16